**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION**

| | | |
|---|---|---|
| **B. JOHNSON and M. JOHNSON,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **SYNOVUS BANK; CRIMSON** | ) | **Case No. 2:14-cv-2950-STA-dkv** |
| **PORTFOLIO, LLC; CRIMSON** | ) | |
| **PORTFOLIO ALPHA, LLC; CRIMSON** | ) | |
| **PORTFOLIO BETA, LLC; MOUNTAIN** | ) | |
| **VIEW MORTGAGE OPPORTUNITIES** | ) | |
| **FUND III TRUST I; CARRINGTON** | ) | |
| **MORTGAGE SERVICES, LLC; STATE** | ) | |
| **BRIDGE COMPANY, LLC; SELENE** | ) | |
| **FINANCIAL, LP.,** | ) | |
| | ) | |
| **Defendants.** | | |

## ORDER GRANTING MOTIONS TO DISMISS

Before the Court are two Motions to Dismiss. Defendant Statebridge Company, LLC ("Statebridge") and Defendant Synovus Bank ("Synovus") filed separate Motions to Dismiss on January 16, 2015. (ECF Nos. 24, 27). Plaintiffs Brian Johnson and Monika Johnson ("the Johnsons") failed to timely respond to either of those Motions. On March 2, 2015, Statebridge filed a notice of the Plaintiffs' failure to respond to Statebridge's Motion to Dismiss. (ECF No. 33). The Plaintiffs' counsel then failed to appear at the scheduling conference on March 13, 2015. The Court entered a show-cause order on March 17, 2015, and the Plaintiffs' counsel satisfactorily responded to that order. (ECF Nos. 35, 42). The Plaintiffs still did not respond to the either of the Motions to Dismiss. The Court then entered a second order directing the

Plaintiffs to respond to the Motions to Dismiss by April 17, 2015. (ECF No. 44). The Court gave notice that it would consider a failure to respond good grounds for granting the relief requested by the moving parties.

The Plaintiffs responded to Synovus's Motion to dismiss on April 17, 2015 (ECF No. 46), to which the Synovus filed its Reply. (ECF No. 49). The Plaintiffs filed a one-page response to Statebridge's Motion to Dismiss and incorrectly indicated that they simultaneously filed an accompanying memorandum of law. (ECF No. 47). Statebridge filed a reply, stating that counsel for Statebridge informed the Plaintiffs of their failure to attach a memorandum of law, but that the Plaintiffs did not respond. (ECF No. 48). The Plaintiffs have not addressed the arguments set forth in Statebridge's Motion to Dismiss. The Court gave the Plaintiffs multiple opportunities to remedy their failure to file a response and gave notice that a failure to comply with the court's order would result in granting the relief requested. Thus, as an initial matter, Statebridge's Motion is **GRANTED**. The Plaintiffs' claims against Statebridge are dismissed with prejudice for failure to comply with a court order.

Despite the Plaintiffs' late-filed response, the Court here considers Synovus's Motion to Dismiss for Failure to State a Claim. For the reasons stated below, the Motion is **GRANTED**.

## BACKGROUND

The Court treats all well-pleaded facts in the Plaintiffs' Amended Complaint as true and draws reasonable inferences in favor of the Plaintiffs.[1] The Johnsons allege that on or about September 4, 2003, they secured a $656,700.00 loan from Trust One Bank to purchase a home in

---

[1] *Children's Ctr. for Dev. Enrichment v. Machle*, 612 F.3d 518, 521–22 (6th Cir. 2010). The Plaintiffs' Amended Complaint is attached to the Defendants' Notice of Removal. *See* ECF No. 1-1, PageID 100–24. In ruling on a motion to dismiss, the Court may consider the complaint, documents referenced in the complaint that are central to the Plaintiffs' claims, and documents that are part of the public record. *See Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001).

Cordova, Tennessee, and executed a deed of trust. (Am. Compl. ¶¶ 22–23, ECF No. 1-1). After merger, Synovus became the successor in interest to Trust One. The Johnsons first began experiencing "a decrease in income production" in 2011 and "decided to pursue loan modification alternatives" through Trust One. (*Id.* ¶ 27). They began discussions with Thomas Willingham, Senior Vice President of Managed Assets at Trust One Bank. (*Id.* ¶ 28). After discussions, Willingham forwarded the Johnsons proposed terms for a loan modification. (*Id.* ¶ 31). The Johnsons allege that "upon reviewing the proposed modification, [they] began to question why the proposed terms were different from the terms previously discussed." (*Id.* at ¶ 32). After a "heated exchange," Willingham asked the Johnsons to itemize their list of concerns, and Willingham ultimately responded to those concerns by email. (*Id.* ¶¶ 36–40). Willingham then sent the Johnsons the "Loan Modification and Agreement" (the "Modification Agreement") on December 15, 2011.

The Modification Agreement separated the Johnsons' original loan into two notes. Among other terms, the Modification Agreement included the following relevant provisions:

- Effective with the January 1, 2012 loan payment, the amount will be $2,665.00 per month based on a principal loan balance of $296,000 amortized over a twelve (12) year term, Note A. Said payment amount will be due and payable the first day of each following month through and including December 1, 2013.

. . . .

- The loan will mature on January 1, 2014. Prior to this maturity, a review will be made as to financial condition, income, payment history, etc. to determine a possibly revised monthly payment and rate reduction.

. . . .

- During this two year period, Shelby County property taxes shall be kept current. Presently, 2010 taxes are past due and 2011 taxes are due. Receipts of periodic payments on the 2010 property taxes will be sent to my attention at a minimum of every 90 days and shall continue as such until all 2010 property taxes have been paid in full.

- If possible, all loan payments are to be sent to [Willingham's] attention at Trust One Bank, 1715 Aaron Brenner Drive, Memphis, TN 38120.
- During the initial two year payment period, all default terms and conditions in original loan documents remain applicable.
- Note B represents the outstanding principal in the amount of $271,381.16 and will be an unsecured loan. The interest rate will continue to accrue interest at 5.00, but is subject to a possible rate reduction during review period(s).
- Upon payment in full of all principal and interest related to Note A, the repayment for Note B regarding it's [sic] terms and conditions will be decided based upon mutually agreeable terms at Note B's inception date.
- Nothing in this Loan Modification and Agreement shall impair, reduce, or change any and all rights of Trust One Bank, a division of Synovus Bank, regarding it's [sic] priority position on said Deed of Trust and related mortgage loan documents except as those expressly noted here.

(Modification Agreement, Shelby County Register of Deeds Instrument No. 12073828, ECF No. 27-2). The Modification Agreement left all unaltered terms of the original loan documents as effective terms. (*Id.* ¶¶ 8, 11). Below the terms, the Johnsons each signed the Modification Agreement before a notary public, dated January 5, 2012. In November 2012, the Johnsons once again contacted Willingham to express interest in another "refinance product that would allow them to combine Note A and Note B and also lower their mortgage payment and interest." (Am. Compl. ¶ 43). Willingham advised the Johnsons that he was having a senior officer in the consumer-lending department look into alternatives for their benefit. (*Id.* ¶ 44). The Johnsons allege that while Willingham "led them to believe" that he was working on a refinancing option for them, the loans had already been sold. (*Id.* ¶ 56).

Synovus assigned the loan to Defendant Crimson Portfolio, LLC ("Crimson").[2] (*Id.* ¶ 47). Synovus notified the Johnsons that it had transferred servicing rights to Defendant Carrington Mortgage Services, LLC ("Carrington") on March 8, 2013. (Notice of Assignment, Ex. 10 to Am. Compl., ECF No. 1-1, PageID 99). That letter informed the Johnsons that Synovus would stop accepting payments after March 31, 2013, and on April 1, 2013, Carrington would start accepting mortgage payments as servicer. (*Id.*). At an undisclosed date, the Johnsons allege that a non-party to this lawsuit, "Sabal," became the loan servicer for Carrington. (Am. Compl. ¶¶ 50–51). Sabal "was confused about the servicing of [the Johnsons'] loan," and the Johnsons continued to seek help from Willingham, who attempted to provide assistance by contacting other entities. (*Id.* ¶¶ 51–52). On February 12, 2013, Willingham emailed Monika Johnson, copying Sabal employees, and stated the following:

> I talked with [Sabal employee] Nick [Martinez] and gave him the full circumstances regarding all three loans. I made him aware of the Modification Agreement that was entered into splitting the single first mortgage into two mortgage notes.
>
> I further explained that the payment history on 18627-11, Note A, has been satisfactory and currently due for 2/1/2013, and that 18727-10, Note B, was not a reportable charge off, only set back until Note A is paid in full, then payments proceed to Note B.
>
> I was not aware how much information was originally sent on each loan at the time of sale, but now Nick is up to date.

(Email from Thomas Willingham to Monika Johnson (Feb. 12, 2013, 2:13 PM), Ex. 9 to Am. Compl., ECF No. 1-1, PageID 96). Sabal later advised the Johnsons that Carrington would be servicing the loan as split into Note A and Note B. (Am. Compl. ¶ 53). The Johnsons allege that they "did not receive a notice of assignment, sale, or transfer of servicing rights from Synovus,

---

[2] The assignment was executed December 10, 2012; it was recorded with the Shelby County Register on April 2, 2013. *See* Assignment of Security Instrument, Shelby County Register of Deeds Instrument No. 13039670, Ex. 8 to Am. Compl, PageID 92.

merged with Trust One, until March 8, 2013." (*Id.* ¶ 54). The Johnsons were to continue paying Synovus until March 31, 2013; on April 1, 2013, they were to remit payment to Carrington. (Notice of Assignment, Ex. 10 to Am. Compl., PageID 90). Furthermore, they allege that "Carrington failed to send any communication regarding the servicing of [their] loan until April 26, 2013" and that "Crimson Portfolio and Carrington refuse to honor the terms of [the Johnsons'] loan modification agreement." (Am. Compl. ¶ 56, 58).

The Johnsons also allege that they "voiced concerns" involving inaccurate credit reporting in January 2013. (*Id.* ¶ 59). This was the result of Trust One allegedly reporting their loans as charge-offs and not as transferred notes. (*Id.* ¶ 60). After the Johnsons contacted him, Willingham reported back that all items on their credit report regarding the Trust One loans had been changed to accurately reflect a transferred note. (*Id.* ¶ 61). Upon checking his credit profile, Brian Johnson reported to Willingham that the changes had not been made. Willingham attempted to help the Johnsons with this problem throughout the relevant period. (*See* Exs. 12–14 to Am. Compl., ECF No. 1-1, PageID 103–08). The Johnsons allege that "[a]s of November 14, 2013, [their] credit profiles have not been corrected and still show their loans as charge-offs and in collections." (Am. Compl. ¶ 66). This, they allege, led to "substantial credit impairment, financial loss," and the risk of foreclosure.[3]

## STANDARD OF REVIEW

A defendant may move to dismiss a claim "for failure to state a claim upon which relief can be granted" under Federal Rule of Civil Procedure 12(b)(6). When considering a Rule

---

[3] The Johnsons' loan was subsequently assigned to other Defendants, as were the servicing rights to the loans. Whether the Johnsons are in foreclosure is not alleged in the Amended Complaint. The other Defendants did not file motions to dismiss, and they do not join in this Motion. Therefore, the Court does not address the Johnsons' claims against those parties in this Order, including whether some down-the-line Defendant breached the Modification Agreement. This Order only addresses Synovus's obligations.

12(b)(6) motion, the Court must treat all of the well-pleaded allegations of the pleadings as true and construe all of the allegations in the light most favorable to the non-moving party.[4]  Legal conclusions or unwarranted factual inferences, however, need not be accepted as true.[5]  "To avoid dismissal under Rule 12(b)(6), a complaint must contain either direct or inferential allegations with respect to all material elements of the claim."[6]  Under Rule 8, a complaint need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief."[7]  Although this standard does not require "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action."[8]  In order to survive a motion to dismiss, the plaintiff must allege facts that, if accepted as true, are sufficient "to raise a right to relief above the speculative level" and to "state a claim to relief that is plausible on its face."[9]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[10]

The Plaintiffs must meet a different standard for allegations of fraudulent activity. Federal Rule of Civil Procedure 9(b) mandates that plaintiffs plead "with particularity the

---

[4] *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Saylor v. Parker Seal Co.*, 975 F.2d 252, 254 (6th Cir. 1992).

[5] *Morgan v. Church's Fried Chicken*, 829 F.2d 10, 12 (6th Cir. 1987).

[6] *Wittstock v. Mark a Van Sile, Inc.*, 330 F.3d 899, 902 (6th Cir. 2003).

[7] Fed. R. Civ. P. 8(a)(2).

[8] *Ashcroft v. Iqbal*, 556 U.S. 662, 681 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *see also Reilly v. Vadlamudi*, 680 F.3d 617, 622 (6th Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

[9] *Twombly*, 550 U.S. at 555, 570.

[10] *Iqbal*, 556 U.S. at 678.

circumstances constituting fraud or mistake."[11]  Generally, this includes "the time, place, and content of the alleged misrepresentations on which [the plaintiff] relied; the fraudulent scheme; the fraudulent intent of the defendants; and the injury resulting from the fraud."[12]

**DISCUSSION**

Although the Johnsons make claims against numerous defendants, the Court only gleans five claims against Synovus.  They include (1) breach of contract, (2) breach of the duty of good faith and fair dealing, (3) violation of the Tennessee Consumer Protection Act, (4) "negligent impairment of credit," and (5) fraudulent misrepresentation.

**I. Breach of Contract**

To state a claim for breach of contract, the Johnsons must allege "(1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of contract."[13]  The Johnsons state that Synovus breached the Deed of Trust or the Modification Agreement.  Rarely pointing to specific written provisions of the Deed of Trust, however, they state generally that Synovus is "commissioned, as a matter of law, to fulfill its obligations under the Deed of Trust, lest it be held liable for breach of contract."  (Am. Compl. ¶ 86).  Then, they allege that Synovus breached either the Modification Agreement or the Deed of Trust in the following ways:

> a. [Synovus] failed to structure Note A of [the Johnsons'] split note to be amortized over 12 years as written in Paragraph 1 of [the Johnsons'] loan modification agreement.

---

[11] Fed. R. Civ. P. 9(b).

[12] *Sanderson v. HCA-The Healthcare Co.*, 447 F.3d 873, 877 (6th Cir. 2006) (internal quotation marks omitted).

[13] *ARC LifeMed, Inc. v. AMC-Tenn., Inc.*, 183 S.W.3d 1, 26 (Tenn. Ct. App. 2005).

      b.  [Synovus] failed to package and assign [the Johnsons'] loan in a manner consistent with the restructuring of [the Johnsons'] loan in the modification agreement.

      c.  [Synovus] failed to notify [the Johnsons] in writing of the revocation of their escrow waiver prior as required in Paragraph 3 and 15 of the Deed of Trust.

      d.  [Synovus] failed to provide [the Johnsons] with timely written notice of loan servicer changes so as to give [the Johnsons] time to redirect payments.

      e.  [The Johnsons] were not notified in writing of any pending servicer changes until March of 2013, which is after [Synovus] advised [the Johnsons] they would no longer be accepting payments for the loan.

      f.  [Synovus] failed to give accurate loan servicer information to [the Johnsons] to aid them in locating the proper loan servicer to communicate payment issues to.

(Am. Compl. ¶ 88).

### A. Term and Amortization

In its Motion to Dismiss, Synovus argues that the Johnsons have not stated a claim for breach of contract. First, as to the Johnsons' allegation that Synovus "failed to structure" Note A to be amortized over 12 years, Synovus asserts that the Johnsons' erroneous interpretation is contrary to the plain text of paragraph 1 of the Modification Agreement, which states that "[e]ffective with the January 1, 2012 loan payment, the amount will be $2,665.00 per month based on a principal loan balance of $296,000 amortized over a twelve (12) year term, Note A."[14] Synovus argues that the Johnsons have based their allegations on an incorrect premise: that the Modification Agreement provided for a 12-year *maturity date* for Note A, rather than a 12-year *amortization period* for purposes of calculating the monthly payments. As the Johnsons point out in their response, they believed they were receiving a 12-year term, rather than a 2-year term with a 12-year amortization period.

---

[14] Modification Agreement ¶ 1, ECF No. 27-2. The Modification Agreement is also recorded at Shelby County Register Instrument No. 12073828 and attached to the Amended Complaint at Exhibit 5.

Thus, the Court must interpret the Modification Agreement, which the parties agree is binding. First, "[t]he central tenet of contract construction is that the intent of the contracting parties at the time of executing the agreement should govern."[15] Furthermore, "[t]he intent of the parties is presumed to be that specifically expressed in the body of the contract."[16] In Tennessee, a court construing a contract must first determine whether the terms are ambiguous, or reasonably susceptible to more than one meaning.[17] Only then will it look to rules of construction. The Court, however, will not place a "strained construction . . . to find ambiguity where none exists."[18] The Modification Agreement is not susceptible to more than one interpretation, and thus it is not ambiguous. Therefore, "the parties' intent is determined from the four corners of the contract."[19] This determination is "generally treated as a question of law because the words of the contract are definite and undisputed," leaving the Court to simply decide the legal effect of the written words.[20]

The Johnsons signed the Modification Agreement on January 5, 2012, after several exchanges with Willingham. It provides that Note A's "amount will be $2,665.00 per month

---

[15] *Planters Gin. Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 890 (Tenn. 2002) (citing *Empress Health & Beauty Spa, Inc. v. Turner*, 503 S.W.2d 188, 190 (Tenn. 1973)).

[16] *Id.*

[17] *Id.* at 890–91.

[18] *Farmers-Peoples Bank v. Clemmer*, 519 S.W.2d 801, 805 (Tenn. 1975).

[19] *Ray Bell Constr. Co. v. Tenn. Dep't of Transp.*, 356 S.W.3d 384, 387 (Tenn. 2011).

[20] *Planters Gin Co.*, 78 S.W.3d at 890 (citing 5 Joseph M. Perillo, *Corbin on Contracts*, § 24.30 (rev. ed. 1998); *Doe v. HCA Health Servs. of Tenn., Inc.*, 46 S.W.3d 191, 196 (Tenn. 2001)).

based on a principal loan balance of $296,000 amortized over a twelve (12) year term."[21]  Thus, Synovus did structure the loan based on a 12-year amortization schedule.  As Synovus points out, "[s]imple math demonstrates that a $296,000 loan at 5% interest amortized over 12 years equals monthly payments of $2,665.00."[22]  Furthermore, the Modification Agreement provides, in plain terms, that "[t]he loan will mature on January 1, 2014."[23]  If the loan was to mature on January 1, 2014, the loan could not have a 12-year term.  A term is not ambiguous "merely because the parties may differ as to interpretations" of the contract,[24]  and the Plaintiffs have pointed to no provision suggesting that the loan would mature after 12 years rather than 2.  The Petitioners are bound by the Agreement they signed:  "to allow a party to a contract to admit that the party signed the contract but to deny that the terms of the contract express the party's agreement would destroy the value of contracts."[25]

The Johnsons argue that Willingham's assurances of a 12-year amortization period and the unstated balloon payment at the end created an interpretation of the contract that ran counter to the express terms.  Whether or not Willingham engaged in fraud is not at issue for this claim, and neither party has alleged a mutual mistake.  Here, the contract terms are clear from the written instrument, which the Johnsons admittedly signed after communicating their concerns

---

[21] Modification Agreement ¶ 1.

[22] Mem. in Supp. Mot. to Dismiss 7, ECF No. 27-1.

[23] Modification Agreement ¶ 3.

[24] *See Maggart v. Almany Realtors, Inc.*, 259 S.W.3d 700, 704 (Tenn. 2008) (internal quotation marks omitted).

[25] *Staubach Retail Servs.-Se., LLC v. H.G. Hill Realty Co.*, 160 S.W.3d 521, 525 (Tenn. 2005) (citing *Giles v. Allstate Ins. Co.*, 871 S.W.2d 154, 157 (Tenn. Ct. App. 1993)).

with Willingham; therefore, any parole evidence is inadmissible.[26] Even if admitted, however, Willingham never stated the term of the loan would be 12 years; he stated the payment structure would be based on a 12-year amortization period.[27]

At its core, the Johnsons' claim that Synovus "failed to structure" the contract with a 12-year term is an admission that the contract is structured with a 2-year term. Indeed, in their Response, they indicate that they were "shock [sic] to see that the *proposed modification terms* appeared to be different than what they had agreed upon with Mr. Willingham."[28] The Johnsons chose, even in their shock at the proposed terms and after Willingham's explanation of those terms, to sign the Modification Agreement and begin paying the agreed monthly payment.

### B. Failure to Properly Package and Assign

Regarding the Johnsons' allegation that Synovus breached the Modification Agreement by "fail[ing] to package and assign [the Johnsons'] loan in a manner consistent with the restructuring of [the Johnsons'] loan in the modification agreement,"[29] Synovus argues that the Johnsons have pointed to no provision of the loan documents that Synovus breached. Furthermore, Synovus argues that this allegation is a restatement of the claim that the

---

[26] *See Farmers & Merchants Bank v. Petty*, 664 S.W.2d 77, 81 (Tenn. Ct. App. 1983) ("The rule that a written contract must prevail over previous or contemporaneous contradictory representations is not merely a rule of evidence, but one of substantive law. . . . Terms of a note cannot be varied by oral proof."). Moreover, the Johnsons were not fraudulently induced into signing the modification: they voiced their concerns to Willingham after being "shocked" by the proposed terms and subsequently signed the modification, which contained the exact same terms.

[27] *See* Am. Compl. ¶ 37. *Cf. Levels v. Merlino*, 969 F. Supp. 2d 704, 725–29 (N.D. Tex. 2013) (dismissing fraudulent misrepresentation claim when plaintiffs incorrectly assumed that a 1-year note with a 30-year amortization period had a 30-year maturity date).

[28] Pls.' Resp. in Opp'n to Synovus's Mot. to Dismiss. 3, ECF No. 46-1 (emphasis added).

[29] Am. Compl. ¶ 88(c).

Modification Agreement provided a 12-year term. In other words, the Johnsons argue that Synovus was liable when subsequent assignees—not Synovus—attempted to enforce Note A based on a 2-year term instead of a 12-year term.[30] The Johnsons reason that Synovus is liable, rather any subsequent holder of their loan, because Willingham was the "author of confusion." Their claims on this basis, however, are claims against subsequent assignees, not Synovus.

The Plaintiffs allege that the subsequent assignees attempted to collect on both notes at the same time. Thus, the Johnsons allege, Synovus breached some undefined duty to correctly notify subsequent purchasers of the substance of the mortgage. Even assuming that the contract gave Synovus a duty to "properly package" the loan upon assignment, the Johnsons' claim is contradicted by an instrument recorded with the Shelby County Register of Deeds and attached as an exhibit to the Johnsons' Complaint. The instrument shows that Synovus assigned all of its "right, title and interest in and to those certain instruments listed on Schedule 'A.'"[31] Schedule A of that instrument refers to the recorded Deed of Trust "as modified by that certain Loan Modification and Agreement dated December 15, 2011."[32] That sentence also refers to the instrument number of the Modification Agreement. The Plaintiffs have not alleged the transfer was improperly recorded, or that Crimson's acceptance was defective; therefore, any actions taken by Crimson or future holders of the mortgage in violation of the Modification Agreement do not place Synovus in breach of the loan documents.

---

[30] *See* Am. Compl. ¶¶ 94(a), 99(a) (asserting that Crimson and Carrington failed to apply the 12-year term).

[31] *See* Assignment of Security Instrument, Shelby County Register of Deeds Instrument No. 13039670, Ex. 8 to Am. Compl.

[32] *Id.*

**C. Notice of Revocation of Escrow Waiver**

The Deed of Trust prescribed how the Johnsons would pay certain items like insurance and property taxes:

> Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items fro which payment of Funds has been waived by Lender . . . . If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds . . . .[33]

The Johnsons claim that Synovus provided no written notice of its revocation of the escrow waiver, and therefore Synovus is in breach of the initial Deed of Trust. This claim fails as a matter of law. The Johnsons do not assert anywhere in their Complaint that Synovus ever waived their obligation to escrow funds for property taxes and insurance. Therefore, no notice of a subsequent revocation of that waiver could ever be required. The Johnsons' allegations do not state a claim.

Furthermore, the Amended Complaint does not contain any allegation that the Johnsons suffered damages because of Synovus's alleged failure to provide written notice of a revocation of the unalleged escrow waiver. As in all breach-of-contract claims, "damages resulting from the

---

[33] Deed of Trust ¶ 3, Ex. 8 to Am. Compl., PageID 40.

breach are a necessary element of the claim."[34]  The Court is unable to draw any inference from the Complaint that Synovus misplaced money or caused any damage to the Plaintiffs.  The Plaintiffs were at all relevant times required to pay property taxes, whether into escrow or directly to the county.  The breach-of-contract claim must fail.

### D. Change in Loan Servicers

The Johnsons next allege that Synovus breached the Deed of Trust by failing to give notice of a change of loan servicers.  Section 20 of the Deed of Trust only specifies that "Borrower will be given written notice of the change" in loan servicers.[35]  There is no specified time period by which the Deed of Trust required Synovus to give notice.[36]  Moreover, this claim is contradicted by the record.  A March 8, 2013 letter from Synovus to Brian Johnson informed him that "[y]our present servicer is Synovus Bank."[37]  The letter, citing the notification period required by the Real Estate Settlement Procedures Act,[38] states that "Synovus Bank will stop accepting your mortgage payments after March 21, 2013" and "[t]he date your new servicer, Carrington Mortgage Services, LLC, will start accepting payments is April 1, 2013."[39]  It further

---

[34] *See Buttrey v. Holloway's, Inc.*, No. M2011-01335-COA-R3-CV, 2012 Tenn. App. LEXIS 861, at *18 (Tenn. Ct. App. Dec. 12, 2012) (citing *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011)).

[35] Deed of Trust ¶ 20, Ex. 8 to Am. Compl., PageID 46.

[36] *See id.* ¶¶ 15, 20.  Although it appears that Synovus's notification satisfies RESPA's requirements, the Court need not address the statute, as the Johnsons do not bring a claim based on its provisions.

[37] Notice of Assignment 1, Ex. 10 to Am. Compl., PageID 99.

[38] *See* 12 U.S.C. § 2605(b)(2)(A).

[39] Notice of Assignment 1, Ex. 10 to Am. Compl.

stated that "[i]f you have already mailed your payment to Synovus Bank and we receive it after the Effective Transfer Date, it will be forwarded to Carrington Mortgage Services, LLC."[40]

In their Response in Opposition, the Johnsons state that they did not miss any payments until after they were given notice of the transfer and after they began receiving collection notices from Defendants other than Synovus.[41] Therefore, even assuming that the notice was somehow deficient under the Deed of Trust, the Johnsons do not allege an essential element of a breach-of-contract claim: that they incurred damages because of the allegedly deficient notice.[42]

The Johnsons also allege that when Synovus assigned servicing rights to Carrington, the Johnsons were not provided accurate loan servicer information. This claim is contradicted by the exhibits attached to the Johnsons' Amended Complaint. The Notice of Assignment advised the Johnsons that they should "SEND PAYMENT TO: Carrington Mortgage Services, LLC P.O. Box 54285 Irvine, CA 92619-4285."[43] Additionally, the Johnsons were provided a toll-free customer service number along with hours and days of operation.[44] More importantly, the Johnsons have not stated how the notice could have been more accurate or what information would have corrected the deficiency. Instead, they make the conclusory allegation that the loan servicer information provided was "inaccurate." Finally, the Johnsons have not alleged damages caused by the alleged inaccuracy of the notice; therefore, their claims fail as a matter of law.

---

[40] *Id.*

[41] Pls.' Resp. in Opp'n Synovus's Mot. to Dismiss 10.

[42] *See Buttrey v. Holloway's, Inc.*, No. M2011-01335-COA-R3-CV, 2012 Tenn. App. LEXIS 861, at *18 (Tenn. Ct. App. Dec. 12, 2012) (citing *Fed. Ins. Co. v. Winters*, 354 S.W.3d 287, 291 (Tenn. 2011)).

[43] Notice of Assignment 2, Ex. 10 to Am. Compl.

[44] *Id.*

## II. Breach of Covenant of Good Faith and Fair Dealing

Under Tennessee law, the contractual duty of good faith and fair dealing is implied in every contract, and parties "owe each other a duty of good faith and fair dealing as it pertains to the performance of a contract."[45]  It does not "create new contractual rights or obligations, nor can it be used to circumvent or alter the specific terms of the parties' agreement."[46]  It is not an independent basis for relief; thus, "absent a valid claim for breach of contract, there is no cause of action for breach of implied covenant of good faith and fair dealing."[47]  The duty governs only performance and enforcement of the contract, not contract formation.[48]

The Johnsons allege that Synovus breached the duty of good faith and fair dealing in the following ways:

a. Synovus breached by refusing to refinance to suit the borrowers' needs;
b. Synovus breached by not honoring the 12-year amortization clause;
c. Synovus breached when, after assigning the Johnsons' loan, Synovus failed to clarify the basis and terms upon which the Johnsons' loan modification was structured; and
d. Synovus breached by refusing to refinance the loans at maturity without requiring the Johnsons to put their home at risk.[49]

---

[45] *Barnes & Robinson Co. v. Onesource Facility Servs., Inc.*, 195 S.W.3d 637, 642 (Tenn. Ct. App. 2006) (citing *Wallace v. Nat'l Bank of Commerce,* 938 S.W.2d 684, 686 (Tenn. 1996); *Elliott v. Elliott,* 149 S.W.3d 77, 84–85 (Tenn. Ct. App. 2004)).

[46] *Goot v. Metro. Gov't of Nashville*, No. M2003-02013-COA-R3-CV, 2005 Tenn. App. LEXIS 708, at *23 (Tenn. Ct. App. Nov. 9, 2005).

[47] *SecurAmerica Bus. Credit v. Schledwitz*, No. W2012-02605-COA-R3-CV, 2014 Tenn. App. LEXIS 178, at *99 (Tenn. Ct. App. Mar. 28, 2014) (internal quotation marks omitted) (quoting *Berry v. Mortgage Elec. Registration Sys.*, No. W2013-00474-COA-R3-CV, 2013 Tenn. App. LEXIS 682, at *23 (Tenn. Ct. App. Oct. 15, 2013)).

[48] *See Wallace*, 938 S.W.2d at 687 (citing Restatement (Second) of Contracts § 205 cmt c. (1979)).

### A. Refusal to Refinance According to Borrowers' Needs

Plaintiffs allege that Synovus breached the implied covenant of good faith and fair dealing by refusing to refinance their loan on terms that were suitable to their needs. Synovus and the Johnsons only agreed to the Modification Agreement executed in January 2012. While the Plaintiffs were seeking additional modifications in November 2012, Synovus was under no duty to refinance or modify in accordance with good faith and fair dealing, which does not apply to contract formation.[50]

### B. Failure to Honor 12-year Term

The Johnsons also allege that Synovus breached the implied covenant of good faith and fair dealing by refusing to honor the 12-year amortization clause. This is simply a restatement of the original breach-of-contract claim. The Modification Agreement provides, in plain terms, that "[t]he loan will mature on January 1, 2014."[51] If the loan was to mature on January 1, 2014, the loan could not have a 12-year term. Instead, Synovus based the payment stream on a 12-year amortization schedule. As their contractual claim fails, the Johnsons cannot couch the same claim as a breach of the covenant of good faith and fair dealing.[52]

### C. Failure to Clarify Terms Upon Assignment

---

[49] Am. Compl. ¶¶ 102–05.

[50] *See Berry*, 2013 Tenn. App. LEXIS 682, at *23 (finding plaintiff's claim of breach of duty of good faith and fair dealing "not cognizable" absent a specific contractual provision requiring the lender to refinance).

[51] Modification Agreement ¶ 3.

[52] *SecurAmerica*, 2014 Tenn. App. LEXIS 178, at *99 ("Thus, absent a valid claim for breach of contract, there is no cause of action for breach of implied covenant of good faith and fair dealing.") (internal quotation marks omitted) (quoting *Berry*, 2013 Tenn. App. LEXIS 682, at *23)).

Next, the Johnsons allege that when Synovus assigned the mortgage to Carrington, Synovus did not clarify the terms of the Modification Agreement, thus breaching the implied covenant of good faith and fair dealing. Yet again, this is a restatement of the claim that Synovus failed to properly package the loan when it transferred the loan to Crimson. The record shows that Synovus did include the terms of the Modification Agreement in the recorded instrument certifying assignment of the note.[53] Synovus was under no contractual duty to ensure proper service of the loan after it properly assigned the loan. Thus, the duty of good faith and fair dealing is not applicable for the same reasons stated in the previous sections.

### D. Failure to Refinance the Loan at Maturity

Finally, the Johnsons allege that Synovus was under a duty to refinance the loan at maturity "without requiring [the Johnsons] to put their home at risk." This is a veiled restatement of the first claim that Synovus failed to refinance to meet the Johnsons' needs. Additionally, there is ultimately no way to know if Synovus would have refinanced or renegotiated the loan upon maturity, as the Plaintiffs had a new servicer and a new noteholder before the January 1, 2014 maturity date.[54]

### III. Violations of the Tennessee Consumer Protection Act

Plaintiffs allege that Willingham engaged in unfair or deceptive acts and practices which are unlawful under the Tennessee Consumer Protection Act ("TCPA").[55] Specifically, the Johnsons state that Willingham failed to apply their payments to principal after he told them that

---

[53] *See* Assignment of Security Instrument, Shelby County Register of Deeds Instrument No. 13039670, Ex. 8 to Am. Compl.

[54] *See* Pls.' Resp. in Opp'n to Synovus's Mot. to Dismiss 10.

[55] *See* Tenn. Code Ann. § 47-18-104(b).

he would do so.  They also allege that the status of the loans was misreported on their credit reports.[56]

Regarding the application of payments to principle, the Plaintiffs' claim fails.  In November 2012, months after the Loan Modification was in place, Monika Johnson emailed Willingham requesting another modification.  In the email, Johnson praised the effect of the Modification Agreement: "What I am especially pleased with is the agreement to apply all payments directly to principal.  Thank you.  This has helped us reduce our principal faster."[57] This statement directly contradicts the Johnsons' allegation that Synovus did not apply payments directly to principal.  Whether a subsequent holder of the note applied payments to principal and whether that holder was required to do so is not relevant to Synovus's Motion to Dismiss.

Regarding incorrect reporting of credit information, the Johnsons' TCPA claim is preempted by the Fair Credit Reporting Act.  The FCRA states that "[n]o requirement or prohibition may be imposed under the laws of any State with respect to any subject matter regulated under . . . section 623 [15 U.S.C. § 1681s-2], relating to the responsibilities of persons who furnish information to consumer reporting agencies."[58]  Therefore, the FCRA preempts TCPA claims based on furnishing inaccurate information to credit reporting agencies.[59]  While the Johnsons allege no claims under the FCRA, "[a] private cause of action against a furnisher of information does not arise until a consumer reporting agency provides a proper notice of

---

[56] Am. Compl. ¶¶ 115–16.

[57] *See* Email from Monika Johnson to Thomas Willingham (Nov. 14, 2012, 12:55 PM), Ex. 6 to Am. Compl., PageID 84.

[58] 15 U.S.C. § 1681t(b)(1)(F).

[59] *See Carney v. Experian Info. Solutions, Inc.*, 57 F. Supp. 2d 496, 502–03 (W.D. Tenn. 1999).

dispute."[60]  The Johnsons' contact with Synovus is not sufficient to obligate Synovus to conduct

an investigation under 15 U.S.C. § 1681s-2(b).[61]  They do not allege that a consumer reporting

agency provided any notice of dispute.  The Johnsons' TCPA claims fail as a matter of law.

## IV. Negligent Impairment of Credit

The Johnsons claim that Synovus was negligent in failing to inform subsequent holders

of the nature of the Modification Agreement, and thus, their credit has been irreparably harmed.

Even assuming that a claim for "negligent impairment of credit" is not preempted by the FCRA,

Tennessee law does not impose common-law duties on financial institutions with respect to their

customers, depositors, or borrowers.[62]  Synovus is correct in asserting that Tennessee courts have

specifically declined to recognize a duty based on a "bank's handling and servicing of [a

borrower's] mortgage loan, including attempts to modify the loan."[63]  Ultimately, this claim of

---

[60] *Brown v. Wal-Mart Stores, Inc.*, 507 F. App'x 543, 547 (6th Cir. 2012) ("[The plaintiff's] allegations that he directly informed Citibank and GEMB did not obligate them to investigate.  A private cause of action against a furnisher of information does not arise until a consumer reporting agency provides proper notice of a dispute. . . . Directly contacting the furnisher of credit information does not actuate the furnisher's obligation to investigate a complaint." (citing *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 615–16 (6th Cir. 2012))).

[61] *See Westbrooks v. Fifth Third Bank*, No. 05-0664, 2005 U.S. Dist. LEXIS 45078, at *11 (M.D. Tenn. Nov. 30, 2005) ("Notification from a consumer is insufficient." (citing *Downs v. Clayton Homes, Inc.*, 88 F. App'x 851, 853 (6th Cir. 2004))).

[62] *See Power & Tel. Supply Co. v. SunTrust Banks, Inc.*, 447 F.3d 923, 932 (6th Cir. 2006) (citing *Glazer v. First Am. Nat'l Bank*, 930 S.W.2d 546, 550 (Tenn. 1996); *Oak Ridge Precision Indus., Inc. v. First Tenn. Bank Nat'l Ass'n*, 835 S.W.2d 25, 30 (Tenn. Ct. App. 1992)).

[63] *Grona v. CitiMortgage, Inc.*, No. 3-12-039, 2012 U.S. Dist. LEXIS 45876, at *8–9 (M.D. Tenn. Apr. 2, 2012) (noting further that the plaintiff's negligence claims were not appropriate when contracts—loan documents—provided the duties of the parties); *see also Vaughter v. BAC Home Loans Servicing, LP*, No. 3:11-cv-00776, 2012 U.S. Dist. LEXIS 6066, at *15 (M.D. Tenn. Jan. 19, 2012) ("Because Plaintiffs cannot establish that Defendant owed them a duty of care with respect to the 'handling' and 'servicing' of their mortgage loan, Plaintiffs' negligence and/or reckless conduct claim must fail.").

negligence is merely a restatement of the Johnsons' breach-of-contract allegations, discussed above.[64]  Therefore, these claims fail for the same reasons.

## V.  Fraudulent Misrepresentation

Finally, the Johnsons claim they were misled by Willingham's representations as to the nature of the loan and the proper packaging of the note when it was sold.   To sustain a claim for fraudulent misrepresentation, the Plaintiffs must establish the following:

> (1) the defendant made a representation of an existing or past fact; (2) the representation was false when made; (3) the representation was in regard to a material fact; (4) the false representation was made either knowingly or without belief in its truth or recklessly; (5) plaintiff reasonably relied on the misrepresented material fact; and, (6) plaintiff suffered damage as a result of the misrepresentation.[65]

Plaintiffs' fraudulent-misrepresentation claims raise four issues: first, whether Willingham represented the note as having a 12-year term instead of a 2-year term; second, whether Willingham misrepresented facts about the structure of Note B; third, whether Willingham misrepresented that all payments would go directly to principal; and fourth, whether Synovus misrepresented that the loan was properly transferred.

The Johnsons' allegations regarding Willingham's representations as to the nature of the note are not supported by the exhibits, which are attached to the Amended Complaint and central to the Johnsons' claims.  The Johnsons point to Willingham's statement that "[t]he amortization

---

[64] *See* Am. Compl ¶¶ 126–29 (alleging failure to honor modification terms and "failure to package loan in a cognizable manner").

[65] *Metro. Gov't of Nashville & Davidson Cnty. v. McKinney*, 852 S.W.2d 233, 237 (Tenn. Ct. App. 1992).

period and therefore your payment stream are based on 12 years."[66] This statement does not contradict the written terms of the contract, which provides for a 2-year term with payments based on a 12-year amortization period. Even if the Plaintiffs can establish ambiguity in the statement, they cannot maintain a claim for fraudulent misrepresentation because the terms in the subsequently executed contract establish a 2-year term for Note A.[67] Furthermore, the Johnsons were concerned about this language, asked Willingham for clarification, received clarification that the payment stream—not the maturity date—was based on a 12-year term, and subsequently signed the note.[68] In other words, there was no misrepresentation.

Second, the Johnsons claim that Willingham made guarantees regarding the payment structure of Note B. They point to Willingham's statement that Note B, an unsecured loan to be secured once Note A was "paid out," would "[be] at terms acceptable to the Bank and you."[69] Willingham's responses to the Johnsons' questions indicate that the terms of Note B would be structured in the future. Statements about events in the future cannot form the basis of a

---

[66] Email from Thomas Willingham to Brian Johnson & Monika Johnson (Dec. 20, 2011, 3:09 PM), Ex. 4 to Am. Compl., PageID 79.

[67] *See Cashia v. Hancock,* No. M1997-00252-COA-R3-CV, 2002 Tenn. App. LEXIS 470, at *32–33 (Tenn. Ct. App. July 9, 2002) ("[T]he right to rescind a contract for fraud must exercise immediately upon its discovery, and any delay in doing so . . . will be deemed an election to confirm it." (citing *Russell v. Zanone*, 404 S.W.2d 539, 544 (Tenn. Ct. App. 1966))); *see also Cirzoveto v. AIG Annuity Ins. Co.*, 625 F. Supp. 2d 623, 629 (W.D. Tenn. May 6, 2009) ("[A] party cannot reasonably rely upon allegedly fraudulent promises which are directly contradicted by the terms of . . . a subsequently executed contract." (internal quotation marks omitted)).

[68] *See* Am. Compl. ¶¶ 36–41; Email from Thomas Willingham to Brian Johnson & Monika Johnson (Dec. 20, 2011, 3:09 PM), Ex. 4 to Am. Compl., PageID 79.

[69] Email from Thomas Willingham to Brian Johnson & Monika Johnson (Dec. 20, 2011, 3:09 PM), Ex. 4 to Am. Compl., PageID 79.

fraudulent-misrepresentation claim, as the misrepresentation must be of an existing or past fact.[70]
After asking Willingham several questions, the Johnsons did not have to sign the Modification
Agreement if they were not satisfied with Willingham's explanations. Nevertheless, they signed
the Modification Agreement, which provides that terms and conditions of Note B would be
"decided based upon mutually agreeable terms at Note B's inception date."[71] Their fraud claim
on this basis fails.

Third, the Plaintiffs allege that Willingham misrepresented that all payments would go
towards the principal of the note.[72] This claim fails for two reasons. First, in an email dated
November 2012, Monika Johnson told Willingham that she was "especially pleased with . . . the
agreement to apply all payments to principal. Thank you. This has helped us reduce our
principal faster."[73] As noted above, this admission clearly shows that Synovus was applying
payments to principal. Additionally, like the claim of misrepresentation of the note's term,
neither the original Deed of Trust nor the Modification Agreement made such guarantees of
payment towards the principal. For the same reasons described above, the Johnsons cannot rely
upon alleged promises which are directly contradicted by the explicit terms of the contract that
they subsequently signed.

---

[70] *See Brown v. Brown*, No. W2013-00263-COA-R3-CV, 2013 Tenn. App. LEXIS 596,
at *24 (Tenn. Ct. App. Sept. 12, 2013); *McElroy v. Boise Cascade Corp.*, 632 S.W.2d 127, 130
(Tenn. Ct. App. 1982) ("The misrepresentation must consist of a statement of a material past or
present fact . . . . Similarly, conjecture or representations concerning *future* events are not
actionable even though they may later prove to be false.").

[71] Modification Agreement ¶ 10.

[72] Am. Compl. ¶¶ 139–40.

[73] Email from Monika Johnson to Thomas Willingham (Nov. 14, 2012, 12:55 PM), Ex. 6
to Am. Compl., PageID 84.

Finally, Plaintiffs' allegation of misrepresentation of the "proper preparation" of the loan when transferred does not state a claim.[74]   As established above, the transfer instrument did include the terms of the Modification Agreement.[75]   Furthermore, the Johnsons' Complaint does not point to any fraudulent or even mistaken representations that Synovus made to them with regard to Synovus's assignment of the loan.   Yet again, the Court notes that any allegations that a subsequent assignee of the loan failed to abide by the terms of any of the loan documents are not proper against Synovus.

## CONCLUSION

The Johnsons' claims against Synovus are founded upon an incorrect understanding of the Modification Agreement.   The Modification Agreement provides for a 2-year, rather than a 12-year term.   Each of the Johnsons' remaining claims against Synovus is a variation of this breach-of-contract claim, and many include no allegation of damages sustained.    After Willingham explained the terms as proposed by Synovus, the Johnsons signed the Modification Agreement.   That agreement is unambiguous.   That the Johnsons were "shocked" to see the proposed terms and yet signed the Modification Agreement containing all of those terms must mean that the Johnsons understood the meaning of the Modification Agreement.   The Johnsons have not stated facts showing how any alleged breaches of the loan documents by Synovus resulted in cognizable injury, and their apparent default happened after Synovus was no longer the holder of the note.   Thus, many—if not all—of their claims are not properly brought against

---

[74] Am. Compl. ¶ 141.

[75] *See* Assignment of Security Instrument, Shelby County Register of Deeds Instrument No. 13039670, Ex. 8 to Am. Compl.

Synovus.  The Johnsons' allegations against Synovus do not state a claim upon which relief may be granted.  For the foregoing reasons, Synovus's Motion to Dismiss is **GRANTED**.

    **IT IS SO ORDERED.**

                                **s/ S. Thomas Anderson**
                                HON. S. THOMAS ANDERSON
                                UNITED STATES DISTRICT COURT

                                Date: July 1, 2015.